IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Richard Oliver Wilson, | ) | C/A No.: 5:13-cv-01998-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Richard Oliver Wilson, brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act.

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of that Act provides: "[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see*, *e.g.*, *Daniel v. Gardner*, 404 F.2d 889 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See*, *e.g.*, *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 775 (4th

1

Cir. 1972). As noted by Judge Sobeloff in *Flack v.Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id*. at 279. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Plaintiff filed his application for disability benefits on March 25, 2011, alleging disability as of December 15, 2004, due to heart attacks, coronary bypass surgery, high blood pressure, and fatigue. Plaintiff's claims were denied initially and upon reconsideration. The plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on October 19, 2012. At the hearing, Plaintiff amended his alleged onset date to December 31, 2007. The ALJ thereafter denied plaintiff's claims in a decision issued December 21, 2012. The Appeals Council considered the claimant's "appeal specifications" and also "looked at" a medical opinion of Dr. Benjamin Lamb dated May 21, 2013[1] but denied the claim. Therefore, the ALJ's findings became the final decision of the Commissioner of Social Security. Plaintiff has now appealed to the federal court.

The claimant was 57 years old on the alleged amended onset date. He completed one year of college. In the Work History Report, he listed previous jobs as follows: "self-employed (reforestation); self-employed (boat builder); accounting (Pepsi soft drinks); branch manager (gas station and construction); head pro (golf professional)." (Tr. 237) On Exhibit 16E Claimant's Work Background, he listed self-employed boat fabrication, supervision of tree planters, "warehouse inventory" with Pepsi

---

[1] The Appeals Council found that Dr. Lamb's May 2013 opinion concerned a later time and did not "affect the decision about whether you were disabled beginning on or before December 21, 2012." (Tr. 2)

of Florence and Carolina Canners, and sales of gas and pump manager. (Tr. 298)   At the hearing before the ALJ, he described the full-time work he has performed:[2]

> I was a golf professional for about eight years. I was a branch manager of a construction company in Virginia for five years. And I was with Pepsi working in the money room where the route drivers and all bring the money in and we verified the account.

(Tr. 42)

## Applicable Law

Under the Social Security Act, the plaintiff's eligibility for benefits hinges on whether he "is under a disability." 42 U.S.C. § 423(a)(1)(D). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . " *Id*. at § 423(d)(1)(A). The burden is on the claimant to establish such disability. *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that he could not perform his customary occupation as the result of physical or mental impairments. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the individual's (1) "residual functional capacity," *id*. at §

---

[2] Plaintiff's jobs in boat building and tree planting were not full-time jobs.

3

404.1561; (2) age, *id*. at § 404.1563; (3) education, *id*. at § 404.1564; (4) work experience, *id*. at § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id*. at § 404.1561.  If the assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id*. at § 404.1561.  The interrelation between these vocational factors is governed by Appendix 2 of Subpart P.  Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined:  (1) whether the claimant is currently gainfully employed, (2) whether he suffers from some physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents him from returning to his previous work, and (5) whether the impairment prevents his from performing some other available work.

The ALJ made the following findings in this case in his decision dated December 21, 2012:

1. The claimant meets the insured status requirements of the
Social Security Act through June 30, 2015.
2. The claimant has not engaged in substantial gainful activity
since December 31, 2007, the amended alleged onset date
(20 C.F.R. 404.1571, *et seq.*)
3. The claimant has the following severe impairments:
coronary artery disease (20 C.F.R.  404.1520(c)).
4. The claimant does not have an impairment or combination
of impairments that meets or medically equals the severity of
one of the listed impairments in 20 C.F.R. Part 404, Subpart P,
Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned
finds that the claimant has the residual functional capacity to perform
light work as defined in 20 C.F.R. 404.1567(b) except for frequent
reaching and feeling with the right upper extremity and must avoid
concentrated exposure to extreme temperatures, humidity and
respiratory irritants.
6. The claimant is capable of performing past relevant work as

a shipping checker. This work does not require the performance
of work-related activities precluded by the claimant's residual
functional capacity (20 C.F.R. § 404.1565)
7. The claimant has not been under a disability, as defined in
the Social Security Act, from December 31, 2007, the amended
alleged onset date, through the date of this decision
(20 C.F.R. § 404.1520(f)).

(Tr. pp. 21-27).

Pursuant to Local Civil Rule 83.VII.02(A), D.S.C, this action was referred to a United States Magistrate Judge. On February 3, 2011, Magistrate Judge Kaymani D. West filed a report and recommendation ("R&R") suggesting that the decision of the Commissioner should be affirmed. The plaintiff filed objections to the R&R on January 26, 2015.

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

**PLAINTIFF'S OBJECTIONS**

In his objections, the plaintiff contends that the Report and Recommendation does not list the job of "shipping checker" as part of his past relevant work, but that the Magistrate Judge recommends affirming the Commissioner's findings that Plaintiff had the ability to perform the job of "shipping checker" as it is generally performed. He also contends that his job at Pepsi was described as an "auditor" in the statement of a manager at Pepsi which is contained in the record. (Exhibit 18E, Tr. 300) He asserts that the DOT does not have a listing for the job that he performed and that his job does not fit the duties of a shipping checker based on the evidence presented, including the testimony of his own VE. He also contends that his past relevant warehouse inventory work did not fit the duties of a shipping clerk.

Plaintiff also asserts that the ALJ "omits consideration of the chronic high blood pressure except as part of the coronary artery disease." (ECF No. 41, p. 2) Finally, Plaintiff contends that the plaintiff should be found disabled under the grids.

**ANALYSIS**

*Past Relevant Work*. A claimant's impairment must prevent him from doing his past relevant work. 20 C.F.R. § 416.920(f). "If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment . . . with the physical and mental demands of your past relevant work. . . If you can still do this kind of work, we will find that you are not disabled." *Id*. A claimant bears the burden of proof of showing at step four "an inability to return to [his] previous work (i.e., occupation), and not simply to [his] specific prior job." *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983). An ALJ "may rely on the general job categories of the *Dictionary* as presumptively applicable to a claimant's prior work." *Id*. "The

6

same label, however, may be used in a variety of ways . . . The claimant may overcome the presumption that the Secretary's generalization applies by demonstrating that her duties were not those envisaged by the framers of the Secretary's category." *Id.* In *DeLoatche*, the Fourth Circuit remanded the case for additional evidence on "the proper characterization of [her] relevant prior work", as "on the present record it was not possible to determine whether her past relevant work was sedentary".

[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past or as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995). SSR 82-61 sets out three tests an ALJ may use in determining whether an individual can do past relevant work: (1) whether the claimant can perform a past relevant job "based on a broad generic, occupational classification of that job, e.g., 'delivery job,' 'packaging job,' etc. Finding that a claimant has the capacity to do past relevant work on (this) basis is likely to be fallacious and unsupportable."; (2) whether the claimant can perform the functional demands and job duties "peculiar to an individual job as he or she actually performed it;" or (3) whether the claimant has the capacity to perform the job as ordinarily required by employers, often utilizing the Dictionary of Occupational Titles (DOT). SSR 82-62 provides:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements of the work; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

> A decision that an individual has the capacity to perform past relevant work must contain

findings of fact as to the claimant's RFC, the physical and mental demands of the past job, and a finding that the individual's RFC would permit a return to his past job. *Id*. The ALJ has a duty to explain his decision in order to allow meaningful judicial review. *See Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). SSR 82-62 provides that "the decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." Also, "[a]dequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations," which information "will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source." *Id*.

**Testimony of Claimant**

The claimant testified regarding his employment with Pepsi as follows: "And I was with Pepsi working in the money room where the route drivers and all bring the money in and we verified the account." (Tr. p. 42)

**Statement of Zander Rodgers, Manager at Pepsi**

Mr. Rodgers states that he is a manager at Pepsi and that he supervised the claimant "when he worked here as an auditor during 2005 and 2006." He described the job as follows:

> The job of auditor here is the job of taking in the cash from our route salesmen, getting it properly counted and completing the paperwork to deposit the money and put the goods back on the routes for the next day. The job is performed standing as the equipment used is placed above the waist for the most part. The job requires lifting and carrying from the safes to the counting equipment the bags of coins and currency brought in by the salesmen. The bags weigh from 30 to 75 pounds and they must be removed from the safes, carried to the sorters, and sorted. After sorting, the sorted money has to be returned to bags for deposit in the bank. These bags are similar weights when filled. There is some paperwork in the reporting, but most of this job is physical. It requires strength, stamina and honesty.

(Tr. p. 300)

8

**Testimony of VE Wilson**

The VE, Mr. Wilson, testified that the claimant's past work in terms of exertional and skill level was fiberglass boat assembler, tree planter, shipping checker, construction supervisor, and golf instructor. (Tr. 59-60) The first hypothethical which the ALJ posed was whether "someone of the same age, education and work experience as the claimant who can do medium work except they can do frequent reaching and feeling with the right upper extremity" and who must avoid concentrated exposure to extreme temperatures, humidity and respiratory irritants would be able to do any of the claimant's past work.  The VE testified that the individual would be able to do the job of shipping checker as it is generally performed but not as the claimant performed it because he had to carry the money to count it. (Tr. 60)  The ALJ then asked if that individual could perform the work if he had the capacity to do only light work.  The VE responded that he could still perform the job of shipping checker as it is generally performed.  Finally, the ALJ asked if the individual could only work for four hours per day whether there would be "any jobs that such a person could perform" and the VE responded, "no".  (Tr. 62)

Counsel for the plaintiff asked the VE what the DOT says the shipping checker does.  The VE replied:

> Verifies quantity, quality, labeling and addressing of products and items of merchandise ready for shipment at manufacturing or commercial establishment: Counts, weighs, measures, or examines packages and contents of items for conformance to company preset specifications. Affixes postage on packages. Use the postal meter, prepares items for customer orders. Keeps records of number of items for packaging. . May oversee crew of workers engaged in loading or bracing materials.[3]

(Tr. 62)

---

[3] The DOT definition of shipping checker also provides: "May keep records on number of baskets of tobacco sold and removed from auction warehouse and be designated Tobacco-Checkout Clerk."  DOT, www.occupationalinfo.org.

9

Counsel for the plaintiff asked the VE whether the shipping checker job would require use of a computer, and he responded affirmatively.

**Testimony of Plaintiff's VE, Dr. Pearsall**

Dr. Pearsall testified that the shipping checker position is "specific to the tobacco industry" and was last updated in 1977. (Tr. 74) He agreed with VE Wilson that the job now requires the use of computers. He also testified that, in his opinion, the shipping checker job was not "representative of (claimant's) past work." *Id*. He also stated that a person who cannot do frequent reaching would not be able to perform any of the past relevant work, "including the two positions that I have stated were misclassified."

**VE Wilson Recalled by ALJ**

The ALJ then recalled VE Wilson to ask him whether "there (is) such a thing within the dictionary of occupational titles as an inventory clerk that is consistent . . . with what you've also described the claimant's past work as a shipping clerk". (Tr. 79) Wilson stated that the job of stock control clerk would be consistent with those duties, and that the "physical demands are light, performs any combination of the filing of file records concerning ordering, receiving, storing, issuing, shipping. Reviews contracts, purchase orders, invoices, keeps stock order files of stock control records. Prepares requisitions, stock numbers. Stock clerks and order file clerks are generally entry level. Because of automation, . . . since they are familiar with computers and other electronic office equipment, will have the best general prospects." (Tr. 79-80) On cross-examination, Wilson testified that, if "the hypothetical employee had a significant impairment in the use of a keyboard", then the job of stock control clerk would not be available. (Tr. 82)

**ALJ Findings**

10

The only findings made by the ALJ regarding the claimant's past relevant work were:

The claimant has past relevant work as a shipping checker. (Exhibit 16E) The vocational expert testified that a person with the above residual functional capacity would be able to perform the work of shipping checker as it is normally performed. While he performed this job at the medium level, it is normally done at the light level per the vocational expert's testimony. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The undersigned specifically asked the vocational expert, pursuant to the requirements set forth in Social Security Ruling 00-4p, whether the opinions expressed were consistent with the occupational information provided in the Dictionary of Occupational Titles (DOT). The vocational expert answered in the affirmative. Based upon the provisions of SSR 00-04p, the undersigned finds the vocational expert's testimony to be reasonable and reliable, since he has first-hand or professional knowledge, as indicated above.

(Tr. p. 26)

## **Analysis**

Plaintiff does not contest the ALJ's finding that he can perform light work. He simply challenges the finding that his past relevant work was a shipping checker and that he could perform his past relevant work. In finding that Plaintiff has past relevant work as a shipping checker, the ALJ cites a Work Background form on which the claimant referred to his job as "warehouse inventory". (Exhibit 16E, Tr. 298) He does not mention the testimony of the claimant as to the nature of his job. Nor does he mention the testimony of Dr. Pearson, the VE offered by the claimant, or the statement by the claimant's former employer, Pepsi.

Respondent contends that the ALJ was entitled to rely on VE Wilson's opinions regarding the shipping checker job and also that any error in this regard was harmless, as VE Wilson also identified the job of stock control clerk as representative of Plaintiff's past job. Respondent also argues that the opinions of the plaintiff's expert VE Pearsall were not supported and that the plaintiff's former supervisor at Pepsi was not a VE.

11

The Court is troubled by the ALJ's failure to discuss the nature of the claimant's past relevant work other than a generalized reliance on the DOT and the testimony from the impartial vocational expert, Mr. Wilson. The Court is also bothered by the fact that the ALJ did not mention the claimant's testimony about his job and only mentioned the statement by the manager at Pepsi in connection with his discussion of the RFC. In addition, the Court is troubled by the failure of the ALJ to evaluate the testimony of the plaintiff's VE, Dr. Pearson. An ALJ has the duty to explain his decision in order to allow the court to engage in meaningful review. "While the Secretary is empowered . . . to resolve evidentiary conflicts, the Secretary, through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence." *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (quoting *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984); *DeLoatche*, 715 F.2d at 151. In particular, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184 *7 (Juy 2, 1996). "[R]emand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision." *Ivey v. Barnhart*, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (citing *Murphy*, 810 F.2d at 438). "Without an analysis of all evidence and a sufficient explanation of the weight given to 'obviously probative exhibits' it is not possible to determine if the ALJ's decision is supported by substantial evidence." *Ivey*, 393 F.Supp.2d at 389-90 (citing *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)).

It is not possible for this Court to determine whether the decision that the plaintiff can perform his past relevant work is supported by substantial evidence. As noted above, the ALJ did not discuss the plaintiff's own description of his job or the statement by his former supervisor, which would tend to show that the job of "auditor" or "warehouse inventory" did not fall within the DOT titles of "shipping checker" or "stock control clerk" but rather dealt primarily with handling money. He did not

discuss the physical and mental demands of the claimant's past relevant work as an "auditor". Nor did he mention the opinions of Dr. Pearson, the claimant's VE, or indicate what weight he gave his opinions.

Therefore, the case is remanded for further findings at Step Four regarding the past relevant work performed by the claimant, including the physical and mental demands of the past relevant work, and considering the testimony of the claimant, the statement of the Pepsi manager, and the plaintiff's VE.

## **CONCLUSION**

After carefully reviewing the record in this matter, the applicable law, and the positions of the parties, the court respectfully rejects the recommendation of the Magistrate Judge and remands the case to the Commissioner for further findings. For the foregoing reasons, the Commissioner's decision is reversed under Sentence Four of 42 U.S.C. § 405(g) and remanded for further proceedings in accordance with this order.

**IT IS SO ORDERED**.

s/R. Bryan Harwell
R. Bryan Harwell
United States District Judge

March 19, 2015
Florence, South Carolina